UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John Raines and Tim McGough, as Trustees of the Carpenters & Joiners Welfare Fund and Twin City Carpenters Pension Master Trust Fund; John Raines as Trustee of the Carpenters of Joiners Apprenticeship and Journeymen Training Trust Fund, and each of their successors,<br><br>  Plaintiffs,<br><br>v.<br><br>Allied Construction Services, Inc. a/k/a ABC Building Products, a/k/a Color, Inc.,<br><br>  Defendant. | Case No. 18-cv-1804-JNE-KMM<br><br><br><br><br><br><br><br>**ORDER** |

---

This matter is before the Court on the plaintiffs' Motion to Compel Discovery and the defendant's Motion for a Protective Order. [Pls.' Mot., ECF No. 42; Def.'s Mot., ECF No. 46.] The Court held a hearing on the motions on July 9, 2019, and took the matter under advisement. As discussed below, both motions are granted in part and denied in part.

**I. Background**

The plaintiffs are trustees ("the Trustees") of several multi-employer pension funds ("the Funds") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001 *et seq.* The Trustees allege that Allied Construction Services ("Allied") is required to make contributions to the Funds for covered work performed within a specified geographic area by Allied's employees pursuant to collective bargaining agreements ("CBAs") entered with a labor union. The CBAs also provide that if Allied subcontracts covered work to a non-union

1

subcontractor, it must arrange for the subcontractor to make the required contributions or do so itself. The Trustees further allege that between January 2015 and December 2017, Allied paid Ray's Drywall, a non-union subcontractor, at least $2.7 million to perform work on construction projects for which contributions should have been made. However, Allied allegedly breached the CBAs by failing to make contributions for that subcontracted work. In their prayer for relief in this litigation, the Trustees seek an order requiring Allied to make unpaid contributions to the Funds for the work Ray's Drywall performed. [Am. Compl., ECF No. 9.] Allied denies that it subcontracted work to Ray's Drywall at all, asserts that the payments referenced by the Trustees were loans, and denies that it breached any provision of the CBAs.

The CBAs also give the Trustees the power to audit Allied under certain circumstances. Wilson-McShane, a company that administers the Funds, audited Allied for the period of 2015–2017 (the "audit period"). The Trustees allege that Allied failed to comply with the audit by impermissibly limiting the records to which the auditors had access. Specifically, the Trustees assert that Allied did not produce records relating to work it may have subcontracted out to Ray's Drywall. Based on the claims that Allied failed to comply with the CBAs' audit requirements, the Trustees' prayer for relief seeks an order requiring Allied to provide sixteen categories of documents for the audit period. [Am. Compl. at 10–11.] Allied asserts that it fully complied with its obligations to participate in Wilson-McShane's audits, claims that the CBAs do not require it to produce the broad scope of information the Trustees seek in this litigation, and denies that it breached the CBAs.

The Trustees served discovery on Allied seeking answers to interrogatories and production of documents. Unsatisfied with several of Allied's responses, the Trustees moved to compel Allied to provide answers to six interrogatories and fifteen document requests pursuant

to Fed. R. Civ. P. 37. [Pls.' Mot.; Pls.' Mem. in Supp. of Mot. to Compel ("Pls.' Mem."), ECF No. 56.] The Trustees also served a subpoena on Ray's Drywall, seeking production of documents and a notice of deposition under Fed. R. Civ. P. 30(b)(6). [*See* Def.'s Mem. in Supp. of Mot. for Protective Order (Def–'s Mem.") at 13, 26–31, ECF No. 48.]

Allied opposes the Trustees' motion [Def.'s Mem. in Opp'n to Mot. to Compel ("Def.'s Opp'n"), ECF No. 57], but also filed its own motion for a protective order aimed, in part, at the exact same set of discovery requests that are the subject of the motion to compel [Def.'s Mem. at 16–18]. In addition, Allied seeks a protective order limiting the non-party discovery the Trustees may obtain from Ray's Drywall. [Def.'s Mem. at 26–31.] The Court heard oral argument on the motions on July 9, 2019, and took the matters under advisement.

## II. Cross Motions and Compromise Positions

At bottom, the disagreement between the parties is about whether broad or narrow discovery is the appropriate path given the nature of the claims set forth in the Plaintiffs' Complaint. The Trustees take the position that broad discovery is a hallmark of federal civil litigation, and pursuant to that principle, Allied is required to provide answers to the interrogatories they served and to produce the documents they requested. In addition, the Trustees suggest that they are largely seeking information that should have been provided during the audit that is the subject of their complaint, so requiring its disclosure at this stage is proper.

Allied essentially counters that the scope of discovery should be limited in this case because: it complied with the CBAs audit provisions; it did not have any subcontractor relationship with Ray's Drywall; and the Trustees cannot receive more through the discovery process than they would have obtained in the audit. Allied also suggests that it is improper for the Court to issue a discovery order providing the same relief that will ultimately be granted if

3

the Trustees succeed on the merits, namely the provision of information that the Trustees argue should have been provided during the audit.

Although Allied opposed the Trustees' Motion to Compel in full, during the meet and confer process and briefing in this matter, it offered two suggestions for a middle-ground solution. First, Allied suggested the proposal for providing discovery to the Trustees for the calendar years 2015–2016:

> 1. Plaintiffs may seek discovery as to Allied's compliance, or lack thereof, with audits by Wilson-McShane Company or its representatives for the years 2015 and 2016, including documents and information requested by Wilson-McShane Company, documents and information Allied provided to Wilson-McShane Company, and documents or information Allied failed or refused to provide upon request from Wilson-McShane Company.
>
> 2. With regard to any information or documents actually requested from Allied by Wilson-McShane Company or its representatives during audits for the years 2015 and 2016, and which Plaintiffs allege that Allied failed or refused to provide at the time of the audit, Plaintiffs may seek from Allied the actual information or documents originally requested by the Auditors. *However, Allied's production of this information should be under the following conditions: (i) the information or documents must be reviewed by representatives of Wilson-McShane Company at Allied's corporate offices in Des Moines, Iowa, (ii) personal contact information of Allied employees may be redacted, (iii) the Auditors may not make copies, reproductions, or take any documents from Allied's offices, and (iv) the Auditors may not share any information they receive with any representative of the Union, including but not limited to the Union's General Counsel and Deputy General Counsel.*

[Def.'s Opp'n at 3 (italics added).] Allied also proposed providing the following information concerning payments that it made to Ray's Drywall during the calendar years 2015 and 2016:

> 1. The names of any Allied employees or representatives who have authority to subcontract bargaining unit work;
> 2. Copies of any contracts or agreements between Ray's Drywall and Allied;
> 3. The substance and formation of any verbal agreements between Ray's Drywall and Allied for Allied to subcontract bargaining unit work to Ray's Drywall;
> 4. A list of any payments Allied made to Ray's Drywall, including the dates of the payments;

4

    5.     The nature of the payments from Allied to Ray's Drywall, specifically including what the payments were for;

    6.     Whether Ray's Drywall repaid Allied and when repayment occurred; and

    7.     Evidence demonstrating Ray's repayment to Allied [subject to Allied's right to redact information from any bank records that does not provide evidence of money exchanged between Allied and Ray's Drywall].

[*Id.* at 14.]

### III.    Analysis

Having considered the nature of the allegations in the Amended Complaint, the specific discovery requests at issue, and the entire record, the Court finds that neither party's most extreme position represents the proper scope of discovery in this matter. Accordingly, the motion to compel and the motion for protective order are granted in part and denied in part as set forth more fully in this Order.

###    A.    Legal Standard

The Federal Rules of Civil Procedure allow:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Trainer v. Cont'l Carbonic Prod., Inc.*, No. 16-CV-4335 (DSD/SER), 2018 WL 3014124, at *2 (D. Minn. June 15, 2018) (quoting Fed. R. Civ. P. 26(b)(1)). This concept of relevance is broad, "'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Paisley Park Enters., Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 1036059, at *2 (D. Minn. Mar. 5, 2019) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The Rules also provide that if a party demonstrates good cause, the Court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court "must limit the frequency or extent of discovery otherwise allowed ... if it determines [that] ... the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Overall, these questions are left very much to the judgment of the Court, which has "broad discretion to decide discovery motions." *Trainer*, 2018 WL 3014124, at *2 (quoting *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 344 (8th Cir. 2012)).

### B. Starting Point: Allied's Compromise Positions

The Court determines that some of the information sought by the plaintiffs is appropriate for discovery in this case, and must be disclosed, while other requests go too far. Overall, the compromises proposed by Allied come very close to striking the appropriate balance. **By this Order,** *except as explained below,* **Allied is required to provide the information contemplated by these proposals through its responses to the Trustees' most applicable interrogatories and to produce documents sufficient to provide this information. These discovery responses shall cover the entire audit period (2015–2017), rather than the narrower 2015–2016 timeframe that Allied proposed.**

However, the Court does not adopt two portions of Allied's compromise proposals. Specifically, the Court does agree that the method by which Allied suggests making the information at issue available to the Trustees' auditors is the right one — the language from Allied's memorandum outlining the compromise that is italicized in the excerpt above is rejected. Nor does the Court permit Allied to redact information from responsive records based

6

on its unilateral determination that the information is irrelevant.[1] Allied has not shown that such limitations are necessary to protect its interests, and the Court finds that they will unreasonably interfere with the Trustees' ability to prepare their case. Allied's concerns regarding access to sensitive information are adequately addressed by the presence of the umbrella Protective Order already entered in this matter, which provides each party the right to designate documents or information not only "Confidential," but also "Confidential-Attorneys' Eyes Only." [*See* ECF No. 21.]

Several factors inform the Court's decision that the discovery provided for above strikes the right balance. First, and central to the Court's consideration, is the scope of the Trustees' claims: (1) that Allied subcontracted covered work to Ray's Drywall and failed to make required contributions to the Funds; and (2) that Allied failed to comply with the audit. The Trustees' requests that are not specifically targeted, in some way, to either the audit or Ray's Drywall are overbroad. As worded several of the interrogatories and requests for production are worded in such a way that a complete response would require the production of a large amount of clearly irrelevant information, even though some subset of that information may relate to the parties' claims and defenses. It is possible that those requests may be amended to obtain relevant information, but the Court will not endeavor to redline the requests for the Trustees.

---

[1] "Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011); *see also Burris v. Versa Products, Inc.*, Civ. No. 07-3938, 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013) ("The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection."); *Hageman. v. Accenture, LLP*, Civ. No. 10-1759, 2011 U.S. Dist. LEXIS 61727, at *12-13 (D. Minn. June 7, 2011) (ruling that "Rule 34 does not permit the redaction of irrelevant portions of 'items,' 'documents,' 'electronically stored information,' and 'designated tangible things.'").

Although many of the requests raised by the Trustees go too far, the Court is not persuaded by Allied's argument that the scope of relevant discovery should be controlled by the company's assertion that it did not engage in impermissible subcontracting without paying contributions under the CBAs and that it complied with the audit. The Court is aware of no authority that stands for the proposition that a party can cabin the permissible scope of discovery by unilaterally declaring that its own view of the merits is correct.

Further, the Court bases its conclusion regarding the scope of discovery on the Trustees' helpful agreement to narrow their original requests in some respects. At the hearing, counsel for the Trustees indicated that they are seeking information that covers only the audit period (January 2015 through December 2017), and only for matters concerning the geographic boundaries covered by the CBAs. [*See also* Def.'s Opp'n at 10 n.4.] These limitations tether some of the Trustees' requests to the claims and defenses in the litigation. The Court adopts them as part of this Order.

Finally, the Court's conclusion is informed by the reality that a substantial portion of the wide-ranging discovery the Trustees have moved to compel overlaps with the ultimate relief the Trustees seek on the merits of their audit claim. This creates a dilemma. It could be argued that by granting the Trustees' motion to compel, the Court would effectively grant the dispositive relief requested in the Amended Complaint without the District Judge ever reaching a resolution on the merits. Unfortunately, the Trustees could not point to a case supporting their suggestion that this is of no concern. Nor could Allied cite any authority concerning this issue. (To be fair, the issue was not explicitly highlighted by the Court until the time of the hearing and the Court's own research did not identify any authority reasonably addressing a similar circumstance.) However, for purposes of resolving the motions before the Court, the Court need not resolve this

interesting question today. Instead the Court has tethered the permitted discovery specifically to proving or disproving the two claims raised in the complaint, namely unpaid contributions as to Ray's Drywall and failure to provide the information required by the audit.[2]

### C. Additional Discovery

For the same reasons explored above, the Court finds that the compromises suggested by Allied do not go quite far enough. Allied is also required to provide information in response to some of the discovery requests that are the subject of the motion to compel, which are discussed at pages 11 through 22 of the plaintiffs' supporting memorandum. [ECF No. 56.]

For the reasons described above, the Court orders the following:

1. Allied shall provide complete answers to Interrogatory No. 7 and Interrogatory No. 8.

2. As currently worded, Interrogatory Nos. 9, 14, 18, and 19, and Requests for Production 3, 5, 7, 11, 12, and 13 are overbroad and seek information that is outside the scope of permissible discovery. These requests generally do not target information concerning Ray's Drywall and would require Allied to provide information that does not bear on the issues in this case.

3. Allied shall provide documents responsive to Request for Production Nos. 6, 14, 15,[3] 18, and 19.

---

[2] At the hearing, the Trustees' counsel suggested that allowing the Trustees to review nearly all of Allied's business records was necessary to help the Trustees establish their audit claim. The Court finds this argument unpersuasive. The information that would be relevant to proving or disproving that Allied complied with the audit provisions of the CBAs is much more circumscribed than allowing the Trustees to rummage without limitation through Allied's records.

[3] Both Request for Production No. 15 and Request for Production No. 7 reference
(footnote continued…)

## IV. Ray's Drywall Subpoena

Allied requested a protective order to prevent the Trustees from taking third-party discovery directly from Ray's Drywall pursuant to a Rule 45 subpoena. Allied asserts that the following document requests in the subpoena are irrelevant and overbroad:

> 2. Any and all documents referring or relating to any joint ventures or joint enterprise between You [Ray's Drywall] and Allied Construction effective, in whole or in part, during the Audit Period (January 1, 2015 through December 31, 2017).
> . . .
> 8. All vendor reports or listings You maintain which list or refer to Allied Construction between January 1, 2015 through December 31, 2017.
> . . .
> 13. Any and all documents related to any transfer of the following between You and Allied Construction between January 1, 2015 through December 31, 2017: . . .
>
>  (c) Equipment;
>  . . . .
>  (e) Independent Contractors or subcontractors
>  . . . .
>
> 14. Any and all documents related to any sharing of the following between You and Allied construction between January 1, 2015 through December 31, 2017:
>  (a) Assets;
>  (b) Remuneration or value;
>  (c) Equipment
>  . . . .
>  (e) Independent Contractors or subcontractors
>  . . . .

[Def.'s Mem. at 28.]

---

Interrogatory No. 7. The reason the Court has treated Request Nos. 15 and 7 differently is based on the specific nature of the requests. The "sign-in sheets" and "related documents" requested in No. 15 include a reasonably well-defined universe of documents that may have a bearing on whether Ray's Drywall employees were working on construction projects with Allied during the audit period. By contrast, Request No. 7's reference to "project or job files for any construction project" that Allied and Ray's Drywall worked on during the audit period would potentially include enormous amounts of information having no bearing on this case whatsoever.

Allied also seeks a protective order prohibiting the Trustees' from pursuing "overbroad deposition topics calling for irrelevant information," including:

3. Any joint ventures or joint enterprises between You and Allied Construction effective in whole or in part, during the Audit Period (January 1, 2015 through December 31, 2017).

. . . .

9. Knowledge of any vendor reports or listings You maintain which list or refer to Allied Construction between January 1, 2015 through December 31, 2017.

10. Knowledge of the ownership of Your company and any individuals or entities who own an interest in Ray's Drywall, Inc.

. . . .

12. Knowledge of any and all contracts You entered with any third party which refer or relate to Allied Construction between January 1, 2015 through December 31, 2017.

. . . .

14. Knowledge concerning the type of work performed by Ray's Drywall, Inc. and the construction projects it has worked on or provided carpentry services to (whether via employee, independent contractor, subcontractor, or labor broker) between January 1, 2015 through December 31, 2017.

15. Knowledge of any transfer(s) of the following between You and Allied Construction between January 1, 2015 through December 31, 2017:

. . . .
   (c) Equipment;
   . . . .
   (e) Independent Contractors or subcontractors
   . . . .

16. Knowledge relating to any sharing of the following between You and Allied Construction between January 1, 2015 through December 31, 2017:
   (a) Assets;
   (b) Remuneration or value;
   (c) Equipment;
   . . . .
   (e) Independent Contractors or subcontractors
   . . . .

. . . .

21. Knowledge of any business documents (payroll, tax forms, employment records, time cards) in Your possession which reference

> Allied Construction and payments You received from Allied
> Construction between January 1, 2015 through December 31, 2017.
>
> . . . .
>
> 25. Knowledge of what union contracts, if any, Ray's Drywall is bound to
> or was bound to and/or complied with between between [*sic*] January
> 1, 2015 and December 31, 2017.
>
> 26. Knowledge of whether You paid any fringe benefit contributions to
> Plaintiffs for hours worked by any individuals performing carpentry
> work between January 1, 2015 and December 31, 2017.

[Def.'s Mem. at 29–30.]

Allied's motion for a protective order concerning Ray's Drywall is granted in part and denied in part for the following reasons. First, Allied's proposed order accompanying the motion asks the Court to prevent the Trustees from seeking "discovery from Ray's Drywall, Inc. – including [the document requests and depositions topics excerpted above] – to the extent that responsive documents or information relates to any relationship between Allied and Ray[']s Drywall that is not a subcontractor relationship." [ECF No. 55 at 2.] However, Allied has failed to demonstrate good cause for limiting discovery in this manner. The Trustees' theory of the case includes an allegation that Allied has arrangements with Ray's Drywall that are not themselves denominated as "subcontractor" relationships. For example, counsel for the Trustees argued at the hearing that if both Allied and Ray's Drywall worked on construction projects together, a hidden subcontractor relationship could have been accomplished through arrangements with the general contractor, despite the fact that Allied and Ray's Drywall never entered an explicit subcontractor arrangement. To limit discovery in the manner suggested in Allied's proposed order would prevent the Trustees from learning the information that is relevant to these issues. Moreover, Allied failed to explain in its memorandum why such a limitation is necessary to keep discovery limited to information that is both relevant and proportional to the needs of the case. To the extent Allied seeks a protective order tracking such a limitation, the motion is denied.

However, during the hearing, the Court explained that, as worded, deposition Topic No. 12 is overbroad. This topic requires Ray's Drywall to testify about the company's knowledge of "any and all contracts [Ray's Drywall] entered with any third party which refer or relate to Allied Construction [during the audit period]." This formulation of the topic would require Ray's Drywall to provide testimony concerning contracts that do not fit the Trustees' theory discussed above. A contract Ray's Drywall entered with a third party could "refer or relate" to Allied in ways that have nothing to do with a potential subcontractor relationship, hidden or explicit. The Trustees are required by this Order to amend deposition Topic No. 12 to better align with their theory of the case so that it comes within the proper scope of discovery identified by the Court.

Third, the Court is persuaded by Allied's argument with respect to one other aspect of the subpoena. Specifically, Allied argues discovery from Ray's Drywall should be focused on the companies' relationships within the geographic area covered by the CBAs. [Def.'s Mem. at 30–31.] The Court agrees that information outside that geographic area is not tailored to the claims and defenses implicated by the Amended Complaint. This finding is consistent with the proper scope of discovery discussed above in this Order and ensures that the non-party, Ray's Drywall, is not subjected to a broader inquiry than the Court has permitted for Allied.

Finally, nothing in this Order prohibits Ray's Drywall from raising any of its own concerns regarding the subpoena in an appropriate motion or through the Court's informal discovery dispute resolution process. The Court advised the parties at the hearing that Ray's Drywall could have an opportunity to be heard about any of its concerns. However, the Court notes that counsel for the Trustees indicated that she has been in contact Ray's Drywall's attorneys and they have had productive discussions concerning the subpoena so far. The parties

indicated that the Ray's Drywall 30(b)(6) deposition is tentatively scheduled for August 22, 2019, and the Court encourages everyone involved to ensure that the deposition takes place in a timely fashion so that the case can remain on schedule and dispositive-motion deadlines are not affected.

**V.      Order**

Consistent with the discussion above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion to Compel Discovery **[ECF No. 42]** is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendant's Motion for Protective Order **[ECF No. 46]** is **GRANTED IN PART** and **DENIED IN PART**.

Date:  August 5, 2019                               *s/Katherine Menendez*
                                                                        Katherine Menendez
                                                                         United States Magistrate Judge